Gants, J.
The Commonwealth of Massachusetts has petitioned this Court to commit the respondents, William Pfistner and John DeBella, as sexually dangerous persons (“SDPs”) under G.L.c. 123A. Pfistner and DeBella, in separate motions, each now moves to dismiss the petition against him on the grounds that the Commonwealth has failed to act within the time periods specified under G.L.c. 123A. Since the subject matter of these two motions is somewhat similar and the respondents share the same attorney, this Court will consider these two motions separately but in the same memorandum.
PFISTNER’S MOTION TO DISMISS
Background
On February 1, 2000, the Commonwealth filed its SDP petition against Pfistner. On February 10, 2000, after hearing, Superior Court Judge Richard Chin denied the Commonwealth’s motion temporarily to detain Pfistner prior to his probable cause hearing. The Commonwealth appealed that denial to the Appeals Court. On February 17, 2000, a three judge panel of the Appeals Court reversed the denial of temporary detention, and remanded the matter to the Superior Court for the entry of an order of temporary commitment. The Appeals Court also ordered that the probable cause hearing be held no later than February 28, 2000. On February 25, 2000, a probable cause hearing was held. After continuing the case to permit additional briefing, Judge Chin on March 31, 2000 found that probable cause exists to believe that Pfistner is a sexually dangerous person, but allowed Pfistner’s motion to dismiss, concluding that the 1999 SDP statute should not be given retroactive effect. Since Judge Chin allowed the motion to dismiss, he did not order Pfistner committed to the Treatment Center for a period not to exceed 60 days for the purpose of examination and diagnosis by two qualified examiners. Judge Chin stayed his order for 14 days to permit the Commonwealth a reasonable time to appeal.
The Commonwealth filed a notice of appeal. On April 14, 2000, the day Pfistner was scheduled to be released under Judge Chin’s Order, a single justice of the Appeals Court stayed the release of Pfistner from custody. On September 7, 2000, the single justice stayed Judge Chin’s dismissal of the petition and his release of Pfistner from custody “pending the Commonwealth’s appeal” or until further order of the Court. The single justice also denied the Commonwealth’s petition to commence the examination of Pfistner by two qualified examiners “pending such stay.” As a result of these stays, Pfistner was left in a kind of legal limbohe was held in temporary civil custody “pending the Commonwealth’s appeal” or until further order of the Court. Given the conditions of his confinement, to Pfistner, the limbo must have felt far more like purgatory.
The Commonwealth, however, by its own admission, did not prosecute the appeal, or dismiss it, or seek to advance this SDP case towards resolution in any way. Rather, it simply abandoned Pfistner in limbo. On September 29, 2000, the Supreme Judicial Court issued its decision in Commonwealth v. Bruno in which it rejected the reasoning that Judge Chin had used to dismiss Pfistner’s petition. 432 Mass. 489 (2000). As a result of that decision, the Commonwealth could have sought a final resolution of the appeal from the Appeals Court or returned to Judge Chin to seek reconsideration of his order of dismissal in light of Bruno. Instead, it did nothing. Indeed, it was only on *146 April 30, 2001, when this motion was heard by the Court, that the Commonwealth, orally, moved for reconsideration of Judge Chin’s order of dismissal. That oral motion came more than seven months after the issuance of the Bruno decision. During this seven months, Pfistner remained civilly committed, and has not even commenced his examination by the two qualified examiners. Indeed, Pfistner has now been committed for more than fourteen months and his case has not progressed beyond the finding of probable cause.
Discussion
When G.L.c. 123A was enacted in 1999, the Legislature set statutory deadlines to ensure that the issue of sexual dangerousness was promptly decided and, where the Legislature was silent, the Supreme Judicial Court has interposed firm deadlines of its own. Consequently, when a respondent in an SDP petition is temporarily detained pending a probable cause hearing, that probable cause hearing, “absent unusual circumstances,’’ should commence no later than ten business days after the order of temporary detention. Commonwealth v. Bruno, 432 Mass. at 513. If probable cause is found, “the prisoner or youth shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners . . .” G.L.c. 123A, §13(a). No later than 45 days after this commitment, the qualified examiners must file with the court "a written report of the examination and diagnosis and their recommendation of the disposition of the person named in the petition.” Id. Within 14 days of the filing of the report of the two qualified examiners, the Commonwealth must decide whether to proceed with the petition and, if it does so intend, must petition the Court for a trial. Unless “continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require,” the trial will be held within 60 days of the Commonwealth’s filing of the petition seeking a trial. G.L.c. 123A, § 14(a). In short, unless continuances are granted, the time period from temporary detention until the commencement of trial is no more than 130 days.
The issue posed by this motion (and the motion brought by DeBella) is how this Court is to enforce these deadlines. There are three analogous contexts in which courts have faced this dilemma, and reached somewhat different solutions. The first and closest analogy is a proceeding to commit a dangerous person under G.L.c. 123. In both cases, the Court must decide whether to commit someone civilly because, unless confined, he is likely to cause serious harm. Compare G.L.c. 123, §8 with G.L.c. 123A,§ 14. Under G.L.c. 123, the danger sought to be prevented is physical harm to the person himself or to other persons. G.L.c. 123, §1. Under G.L.c. 123A, the danger sought to be prevented is sexual offenses committed against other persons. G.L.c. 123A, §1.
In Hashimi v. Kalil, the Supreme Judicial Court, faced with a statutory mandate under G.L.c. 123, §7(c) that “(t)he hearing shall be commenced within fourteen days of the filing of the petition unless a delay is requested by the person or his counsel," ordered a petition for commitment dismissed when the hearing was commenced fifteen days after the filing of the petition. 388 Mass. 607 (1983). The Supreme Judicial Court declared:
[A] general rule exists that directions to public officers for the protection of rights are mandatory. Since the words of the statute are clear and unambiguous and since, given their ordinary meaning, they yield a workable and logical result, there is no need to resort to extrinsic aids in interpreting the statute ... It must be kept in mind that this statute provides a mechanism for a restraint on an individual’s personal liberty . . . That the statute imposes a restraint on liberty also compels the conclusion that the time limit on the holding of the hearing goes to the essence of the public duty.
Id. at 610. In reaching this decision, the Supreme Judicial Court must have recognized that it was ordering the release of a person who, if the- hearing were held, maybe found dangerous to himself or others. It reasoned that the Legislature, in setting clear and unambiguous deadlines, was prepared to pay this price in order to limit the restraint on liberty that would result from the disregard of these deadlines. See id.
The second analogy is Mass.R.Crim.P. 36(b)(1), under which a criminal defendant is entitled to a dismissal of the charges against him if he is not brought to trial within the time limits set by the Rule. Under this Rule, an arrested defendant must be tried within 12 months after first being brought before the court to answer the charges against him, excluding the sources of delay identified in the Rule. Mass.R.Crim.P. 36(b)(1) and (2); Commonwealth v. Sigman, 41 Mass.App.Ct. 574, 575 (1996). Once the defendant has made a prima facie showing that the time limit established in Rule 36 was not met, the burden shifts to the Commonwealth to justify the delay. Barry v. Commonwealth, 390 Mass. 285, 291 (1983). A defendant is not entitled to dismissal if he was responsible for the delay or acquiesced in it. Id. at 295-96 & n. 13; Commonwealth v. Lauria, 411 Mass. 63, 68 (1991); Commonwealth v. Spaulding, 411 Mass. 503, 505-06 (1992).
The third analogy is Mass.R.Crim.P. 36(c), under which a criminal defendant is entitled to a dismissal when there is prejudicial delay. To obtain a dismissal on this ground, the Count must find both that “(1) the conduct of the prosecuting attorney in bringing the defendant to trial has been unreasonably lacking in diligence and (2) this conduct on the part of the *147 prosecuting attorney has resulted in prejudice to the defendant.” Mass.R.Crim.P. 36(c).
This Court finds that the first analogy is the most appropriate with respect to the mandatory language under G.L.c. 123A, §13(a), providing:
If the Court is satisfied that probable cause exists to believe that the person named in the petition is a sexually dangerous person, the prisoner or youth shall be committed to the treatment center for a period not exceeding 60 days for the purpose of examination and diagnosis under the supervision of two qualified examiners ..."
As under G.L.c. 123, §7(c), the Legislature chose to use the word “shall,” which “is ordinarily interpreted as having a mandatory or imperative obligation.” Hashimi v. Kalil, 388 Mass. at 609. As under G.L.c. 123, §7(c), this mandate is intended to ensure a prompt resolution of the petition in order to protect the rights of those alleged to be dangerous if not confined. See id. at 610. Here, seven months after the Bruno decision and many months after the Commonwealth abandoned prosecution of its appeal, the step which the statute mandates shall happen has not happenedthe respondent has yet to be committed to the Treatment Center for the purpose of examination and diagnosis by two qualified examiners. As a result, his petition has not progressed one iota, and his loss of liberty has been needlessly prolonged. The violation of this statutory mandate requires the dismissal of this petition.
It should be noted that this result would not be any different if the other two analogies were thought more appropriate. If the Mass.R.Crim.P. 36(b) analogy were thought more appropriate, this is not a case in which Pfistner can reasonably be found responsible for the delay or to have acquiesced in it. In view of the dismissal of his petition by Judge Chin, it is not the appropriate role of his attorney to press the Commonwealth’s appeal or to file a motion with Judge Chin to reconsider that decision so that the dismissal can be vacated and the petition seeking civilly to commit his client for one day to life can proceed. The Commonwealth bears sole responsibility for this delay.
If the Mass.R.Crim.P. 36(c) analogy were thought more appropriate, dismissal would still be the appropriate remedy. There can be no doubt that the conduct of the prosecuting attorney in moving this case towards trial has been unreasonably lacking in diligence. Indeed, the prosecuting attorney’s willingness to allow this case needlessly to linger for seven months while Pfistner was deprived of his liberty demonstrates a shameful disregard for Pfistner’s liberty interests. Nor can there be any doubt that the prosecuting attorney’s failure to prosecute this case with reasonable diligence has resulted in substantial prejudice to the respondent. Pfistner, having completed his criminal sentence, has now been temporarily committed for more than fourteen months, has needlessly remained in civil custody for at least seven months, and has yet to be examined by any of the two qualified examiners so that the Commonwealth, in view of their findings, can decide whether it wishes to proceed with the petition. Prejudice in the. context of Mass.R.Crim.P. 36(c) “is not restricted to prejudice to the preparation or presentation of the defense.” Mass.R.Crim.P. 36, Reporter’s Notes. It includes “oppressive pretrial incarceration” resulting from the prosecutor’s unreasonable delay. Id., quoting Barker v. Wingo, 407 U.S. 514, 532 (1972).
This Court is very aware that, in dismissing this petition, it is releasing a person who may eventually have been found to be sexually dangerous, much like the Supreme Judicial Court in Hashimi v. Kalil released a man who may have been a danger to himself and to others. Yet, in view of the mandatory language of the statute and the unreasonable failure of the Commonwealth to prosecute this petition with anything approaching diligence, no other remedy is appropriate. When the Commonwealth, as here, acts with utter disregard for the deadlines set by statute and the liberty interests of those accused of being sexually dangerous, it effectively leaves the Court with no other reasonable alternative.
For the reasons stated above, Pfistner’s motion to dismiss is ALLOWED and the petition against him is hereby DISMISSED.
DEBELLA’S MOTION TO DISMISS
Background
On August 1, 2000, the Commonwealth filed its SDP petition against DeBella. On September 12, 2000, an order of temporary detention was entered by Judge David McLaughlin. A probable cause hearing was conducted on October 10, 2000. The next day, Judge Raymond Brassard found that probable cause exists to believe that DeBella is a sexually dangerous person, and committed DeBella to the Treatment Center for a period not to exceed 60 days for examination and diagnosis pursuant to G.L.c. 123A, § 13(a). On December 4, 2000, having reviewed the reports of the qualified examiners, the Commonwealth moved for trial. Since that date, apart from a motion for discovery filed by the Commonwealth on March 2, 2001, the docket reveals no activity until April 6, 2001, when the defendant filed this motion to dismiss. No date for trial has yet been scheduled by the Court.
Under G.L.c. 123A, § 14(a), if the Commonwealth, after the finding of probable cause and the filing of the qualified examiners’ reports, timely moves for trial:
the court shall notify the person named in the petition and his attorney, the district attorney and the attorney general that a trial by jury will be held within 60 days to determine whether such person is a sexually dangerous person. The trial may be continued upon motion of either parfy for good *148 cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby.
G.L.c. 123A, §14(a). DeBella observes that, under this statutory provision, his trial should have been held no later than February 2, 2001, since neither party moved for a continuance and the Court did not act on its own motion to continue. He now moves for dismissal for failure to comply with this deadline.
Discussion
From the language of G.L.c. 123A, § 14(a), it appears that the Legislature intended that, once the Commonwealth moves for trial in an SDP case, the Court should notify the relevant parties that the case will be tried within 60 days, probably by setting a trial date within the 60 days. Once that trial date is set, it can be postponed only by motion of either party for good cause shown or by the court on its own motion if justice so requires, unless the postponement substantially prejudices the respondent. Here, the Court did not fulfill this obligation. Rather, in Plymouth County Superior Court, a trial date historically has not been set in an SDP case until counsel has informed the First Session Judge that they are ready for trial. Since that did not happen here, no trial date has been set, even though more than five months have elapsed since the Commonwealth moved for trial.
If this Court were, as the respondent suggests, to adopt Hashimi v. Kalil as the governing case with respect to the 60-day presumptive deadline for trial, then this SDP case would indeed need to be dismissed, because far more than 60 days have passed without any continuance having been sought or granted. However, in contrast with the language in G.L.c. 123, §7(c) focused on in Hashimi, the Legislature never used the word “shall” in G.L.c. 123A, §14(a) to establish this 60-day deadline. Consequently, the language chosen in G.L.c. 123A, §14(a) does not bespeak the same “mandatory or imperative obligation.” See Hashimi v. Kalil, 388 Mass. at 609.
This Court believes that the more appropriate analogy for enforcing this 60-day presumptive deadline is the criminal speedy trial obligations under Mass.R.Crim.P. 36(b), where time limits to commence trial were also established, albeit by rule rather than statute. As noted earlier, a defendant is not entitled to dismissal under Mass.R.Crim.P. 36(b) when his case has lingered beyond the speedy trial time limits if he was responsible for the delay or acquiesced in it. Barry v. Commonwealth, 390 Mass. at 295-96 & n. 13; Commonwealth v. Lauria, 411 Mass. at 68. “What needs to be done is a careful analysis of how each of the parties with obligations to help manage the case under rule 36 dealt with, or responded to, the problem causing the delay.” Commonwealth v. Lauria, 411 Mass. at 70. The defendant, “consistent with [his] rule 36 obligations, [is] at least required to express [his] dissatisfaction with the continuing delay or indicate that [he] might be incurring prejudice as a result of it, and, by not doing so, could warrantably be found by the motion judge to have tacitly agreed to the delay.” Id. at 70-71; see also, e.g., Barry v. Commonwealth, 390 Mass. at 296-97 & n. 13; Commonwealth v. Farris, 390 Mass. 300, 305 (1983). In short, before a defendant can win dismissal of a criminal case under Mass.R.Crim.P. 36(b), he must at least complain about the delay. He cannot lay silently in wait and then pounce when the deadline has passed.
Here, the respondent chose to say nothing about the delay in bringing this case to trial precisely so he could bring this motion. He failed to complain about the delay or ask for a trial date within the-60-day time limit, and then, when that deadline was long gone, moved to dismiss for failure to comply with that deadline. This Court finds that, by his failure even to ask for a trial date within the 60-day period, the respondent acquiesced in the Court’s failure to set a trial date. The respondent must attempt in good faith to obtain a timely SDP trial in order to obtain relief for the denial of a timely trial.
In this regard, DeBella’s case stands in sharp contrast with that of Pfistner. With DeBella, the case has proceeded to the stage where the only remaining step before final adjudication is trial. DeBella’s counsel does not disregard his client’s interests by seeking to obtain a prompt trial, especially when acquiescing in the delay will prevent dismissal. Pfistner’s counsel stood in a very different position, since the only ways he could move the case forward was either to ask Judge Chin to vacate his dismissal or the Appeals Court to grant the Commonwealth’s appeal. Each of these courses of action are contrary to his client’s interests, and the law cannot ask him to engage in such conduct in order to obtain a legal remedy on behalf of his client.
While this Court finds that DeBella is not entitled to dismissal of the petition because he acquiesced in the Court’s failure to set a timely trial date, that does not mean that he is not entitled to an SDP trial within 60 days of the Commonwealth’s motion for trial under G.L.c. 123A, §14(a).Itsimplymeansthathemustearn this entitlement by complaining about its denial. This Court finds that DeBella, when he filed this motion on April 6, 2001, effectively ended his acquiescence in trial delay. Therefore, this Court asks the Clerk of the Second Session to set this case for trial no later than June 5, 2001, so that it may be tried, in the absence of a continuance for good cause shown, within 60 days of the end of the period of acquiesced delay. The denial of his motion to dismiss shall be without prejudice. He may renew the motion if this SDP case is not tried (or continued for good cause shown) by June 5, 2001.
ORDER
After hearing, for the reasons detailed above, this Court hereby ORDERS that:
*149 1. Pfistner’s motion to dismiss is ALLOWED and the petition against him is hereby DISMISSED. He shall be released from the Treatment Center forthwith.
2. DeBella’s motion to dismiss is DENIED without prejudice.
This Court asks the Clerk of the Second Session to set this case for trial no later than June 5, 2001, so that it may be tried, in the absence of a continuance for good cause shown, within 60 days of the end of the period of acquiesced delay. DeBella may renew the motion if this SDP case is not tried (or continued for good cause shown) by June 5, 2001.